IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>vs.<br><br>PITCHFORK INVESTMENTS CO., SEAN O'BRIEN, MARGO BELDEN, DAVID BRANDOS AND LAURI PAUL,<br><br>            Defendants. | CV-21-49-M-KLD<br><br>ORDER |

Pending before this Court is Defendants Pitchfork Investments Co., Sean O'Brien and Margo Belden's Motion to Dismiss for failure to state a claim (Doc. 9). Pitchfork argues this Court should decline to exercise jurisdiction over this action. For the reasons stated below, the motion should be granted and this case dismissed.

I.    **Background**

This case arises out of an underlying suit filed in Montana's Twenty-first Judicial District (No. DV-20-281) by David Brandos (Brandos) and Lauri Paul (Paul) against Pitchfork Investments, including its president Margo Belden (Belden) and employee Sean O'Brien (O'Brien) (hereinafter collectively "Pitchfork"). (Doc. 1). Atlantic Casualty Insurance Company (Atlantic) issued a

1

Commercial General Liability Policy to Pitchfork, for policy period May 28, 2019

to May 28, 2020. (Doc. 1). In early 2019 Pitchfork entered into a lease agreement

with Brandos to operate a fly-fishing shop. O'Brien was responsible for overseeing

the rental for Belden and Pitchfork. (Doc. 1-1 (Complaint and Request for Jury

Trial filed in the Underlying Suit)).

On July 7, 2019, O'Brien allegedly entered the shop, approached Brandos,

and shoved Brandos against the counter. (Doc. 1-1, ¶ 11). Brandos called 911 after

seeing O'Brien and asked his girlfriend, Lauri Paul, to go into a back room of the

shop. (Doc. 1-1, ¶ 12). The Underlying Complaint states that O'Brien proceeded to

physically assault Brandos by punching and poking him, and that O'Brien

threatened to kill Brandos. (Doc. 1-1, ¶¶ 14-15). Paul overheard the altercation and

was present for parts of incident. (Doc. 1-1, ¶¶ 16-19).

After the event, O'Brien was arrested, charged with assault, and taken to a

detention center (Doc. 1-1, ¶ 22; and Doc. 10, Ex. A (Pitchfork and Belden's

Answer and Demand for Jury Trial in the Underlying Suit, ¶ 22 (admitting

"O'Brien was arrested for misdemeanor assault and taken to a detention 3

facility"))). Brandos incurred medical expenses due to the injuries O'Brien

allegedly inflicted during the altercation between the two men. (Doc. 1-1, ¶ 26).

Brandos and Paul allege O'Brien continued a course of intimidation against

Brandos over the coming weeks, including making threats to Brandos and violating

2

the terms of a restraining order by showing up to the shop, behaving in a menacing

manner, and mouthing inaudible words. (Doc. 1-1, ¶¶ 27-32). Brandos alleges he

was so afraid of O'Brien, he had to terminate his lease and leave Montana.  (Doc.

1-1, ¶¶ 34-35).

The Underlying Complaint alleges five causes of action: (1) continuing

course of assault and intimidation; (2) intentional infliction of emotional distress;

(3) negligent hiring; (4) negligent supervision/retention; and (5) negligent infliction

of emotional distress. (Doc. 1-1, ¶¶ 43-69). Brandos and Paul seek over $200,000

in damages, which consist of emergency room expenses, business losses, and costs

for selling a home. (Doc. 1-1 at 9 and App. B).

Pitchfork notified Atlantic of the underlying lawsuit and Atlantic agreed to

defend Pitchfork against the claims made in the underlying action under a

reservation of rights. (Doc. 12).  Atlantic filed this declaratory judgment action for

a determination of its obligations under Pitchfork's policy. Atlantic asserts the

Underlying Suit does not appear to allege any property damage as defined in the

policy issued to Pitchfork, and claims the bodily injuries alleged in the Complaint

are outside the scope of coverage as defined in the Policy, which requires that

bodily injury be "caused by an 'occurrence" (Doc. 12 at 17). The Policy defines

"occurrence" to mean "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions." (Doc. 12 at 17).

Atlantic alleges the bodily injury alleged in the Complaint was not sustained during an occurrence, but an intentional assault by O'Brien. The Policy contains an exclusion titled "Expected Or Intended Injury," which Atlantic asserts precludes coverage for expected or intended injuries allegedly caused by O'Brien.  (Doc. 1 at 33). Atlantic further asserts the Policy contains various other exclusions which should result in a finding that Atlantic has no duty to defend or indemnify in the Underlying Suit.  (Doc. 1, at 16) (Prayer For Relief, ¶¶ 1-2).  Accordingly, it asks the Court to determine its obligations to indemnify and defend Pitchfork in the Underlying Suit.  Brandos and Paul filed the instant motion, asking the Court to dismiss this action pending resolution of the Underlying Suit.

## II.   Discussion

As an initial matter, the Court notes that Pitchfork's motion to dismiss was filed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. However, as conceded by Pitchfork, Atlantic has stated a claim upon which relief could be granted in its complaint, and Rule 12(b)(6) is not applicable to the instant motion. Accordingly, the Court will address the merits of Pitchfork's motion.

Under the Declaratory Judgment Act (the "Act"), federal courts may declare the rights and other legal relations of any interested party involving an actual controversy within its jurisdiction. 28 U.S.C. § 2201(a). Atlantic brings this action pursuant to the Act. As the Act's permissive language makes clear, a court's

decision whether to exercise jurisdiction over a declaratory judgment action like the present one "is committed to the sound discretion of the federal district courts." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002).

The Ninth Circuit has held that in actions for declaratory judgment under the Act, "the district court must first inquire whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). The Act's case or controversy requirements is "identical to Article III's constitutional case or controversy requirement." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). The Ninth Circuit has held that there is a "case or controversy" for purposes of Article III when an insurer brings a declaratory judgment action regarding its duty to defend and indemnify, even when the underlying liability action in state court has not yet proceeded to judgment. *Kearns*, 15 F.d3d at 144. Atlantic's complaint for declaratory relief thus satisfies Article III's case or controversy requirement.

While the Act gives federal courts the "remedial power" to award declaratory relief, it does not immediately grant jurisdiction. This must exist independent of the Act. *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011). "In other words, federal courts have discretion under [the Act] only as to whether to award declaratory relief pursuant

to the jurisdiction that they must properly derive from the underlying controversy between the litigants." *Countrywide Home Loans*, 642 F.3d at 853. This means that "when courts refer to a district court's discretion to 'exercise' or 'accept' jurisdiction under the Act," what they are really talking about is "the court's discretion to provide a declaratory remedy pursuant to its otherwise proper subject matter jurisdiction over a dispute." *Countrywide Home Loans*, 642 F.3d at 853.

Here, there is no dispute that this Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds $75,000. (Doc. 1 at 2.) The question now before this Court is if exercising its discretion under the Act and entertaining Atlantic's claims for declaratory relief would be proper. Pitchfork argues exercising jurisdiction would be improper and ask the Court to stay or dismiss this action based on the *Wilton/Brillhart* doctrine pending resolution of the lawsuit in State court.

A federal court has discretion to dismiss a federal declaratory judgment action when the question in controversy can better be settled in a pending state court proceeding. *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222. The *Wilton/ Brillhart* doctrine establishes three factors to consider when determining whether to accept or stay a declaratory judgment: (1) The district court should avoid needlessly determining state law issues; (2) it should discourage forum

6

shopping; and (3) it should avoid duplicative litigation. *R.R. Street & Co. v. Transport Ins. Co*., 656 F.3d 966, 975 (9th Cir. 2011) (see *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942); *Wilton v. Seven Falls Co*., 515 U.S. 277, 289–90 (1995)). There is a presumption in favor of dismissal when the federal action involves the same parties and issues. *Dizol*, 133 F.3d at 1225.

No presumption arises in this case, as Atlantic is not a party to the Underlying Suit and the Underlying Suit does not raise the same questions of policy coverage. This is not the end of the inquiry, however, as the Ninth Circuit has noted that "[t]he *Wilton/Brillhart* factors are implicated when a related action rests on the same factual circumstances." *Mid-Century Ins. Co. v. Rick's Auto Body, Inc.*, 2017 WL 4896105, * 2, citing *Am. Nat'l. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995). Because this case indisputably involves the same factual circumstances as the Underlying Suit, the Court will apply the *Wilton/Brillhart* factors to determine whether it should exercise jurisdiction in this matter.

## A. Needless Determination of State Law Issues

The Ninth Circuit has held it is the "rare circumstance" where a court should decline jurisdiction simply because state law supplies the law governing a decision, especially when a federal court is deciding a "routine issues of state law", such as insurance coverage. *Mid Century Ins. Co. v. Rick's Auto Body, Inc*. 2017 WL

4896105 (D. Mont. 2017) citing *R.R. St. & Co.*, 656 F.3d at 980-981. The analysis

under *Brillhart* is not simply whether a diversity case interprets state law but

whether it does so needlessly. *Qilin v. CSAA General Ins. Co.*, 2016 WL 124860, *

3 (D. Mont. March 29, 2016), citing *Dizol*, 133 F.3d at 1225. When a federal court

is tasked with applying established principles of Montana law to determine an

insurer's obligation under the policy, the first *Brillhart* factor weighs against

dismissal. *The Phoenix Ins. Co. v. Ed. Boland Construction, Inc.*, 2016 WL

4045418, *2 (D. Mont. June 7, 2016).

The questions before the Court in this case rest on well-established state law

insurance principles. *Rick's Auto Body, Inc.*, at *3. Atlantic is asking this Court to

declare its contractual relationship to an insured, an issue that is commonly brought

in front of this court in diversity suits. See generally *Admiral Ins. Co. v. Dual

Trucking, Inc.*, 2021 WL 1293091, at *2 (D. Mont. Apr. 7, 2021); *Sec. Nat'l Ins.

Co. v. Countricorp*, 2015 WL 12747956, at *1 (D. Mont. Nov. 16, 2015).

However, as Pitchfork points out, there are disputed issues of fact that will be

developed in the Underlying Suit which will potentially affect Atlantic's

contractual obligations.  For example, the Underlying Suit will determine whether

O'Brien's conduct was intentional or accidental and will determine whether the

emotional distress claims arise from a physical injury.  While the Underlying Suit

alleges common torts that this Court is certainly capable of considering, it remains

the case that the Underlying Suit will consider these exact issues, as framed by a comparison of the Underlying Suit's Complaint and Answer.  Accordingly, this factor weighs in favor of dismissal.

## B. Forum Shopping

The second *Brillhart* factor addresses whether the court's exercise of jurisdiction will encourage "forum shopping." *R.R. St. & Co.*, 656 F.3d at 975. Forum shopping occurs when a party selects federal court to achieve a better outcome or gain a tactical advantage unavailable in the state court action. *International Ass'n of Entrepreneurs of America v. Angoff*, 58 F.3d 1266, 1270 (1995). The concern of forum shopping arises when a litigant instigates a "reactive" proceeding in federal court. *Dizol*, 133 F.3d at 1225.

Here, nothing suggests Atlantic filed the instant case intending to achieve a better outcome or gain a tactical advantage, nor does Pitchfork allege as much. Thus, the second *Brillhart* factor is neutral and does not weigh in favor or against abstention.

## C. Avoidance of Duplicative Litigation

The third *Brillhart* factor requires the Court to consider whether there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed." *Dizol*, 133 F.3d at 1225.  The Ninth Circuit has noted that actions may be considered parallel under *Brillhart* "if the legal

questions presented in the federal action 'involve interpretations of state law related to a factual dispute pending before the state court.'" *Mid-Continent Cas. Co. v. Weaver Dev.,* LLC, 2013 WL 12141487, *5 (D. Mont. 2013) (citations omitted). When that occurs, "the state court is the more suitable forum." *Weaver Dev.*, * 5.

Atlantic is not a party to the Underlying Suit, and the Underlying Suit does not involve the determination of Atlantic's obligations to defend and indemnify Pitchfork.  However, that is not where the analysis ends.  The Underlying Suit arises from interactions between O'Brien, Brandos and Paul, and the Complaint alleges loss of use of property resulting from O'Brien's actions as well as emotional distress.  Atlantic argues the allegations of O'Brien's intentional conduct establish that there is no coverage under its Policy, and that the determination of the duty to defend and to indemnify can be made with no additional factual allegations.  Pitchfork, on the other hand, argues there are numerous factual determinations which must be made in order to determine the duty to indemnify, including, among others: whether O'Brien was acting in the course and scope of his employment at the time of the incident, whether O'Brien's conduct was accidental or intentional, whether O'Brien was acting in self-defense at the time of

the incident;[1] and whether Paul's emotional distress arises from a physical injury. (Doc. 10 at 11).

Both parties have cited *Gonzales v. Nat'l Union Fire Ins. of Pittsburgh, PA*, 2011 WL 4899905, at *1 (D. Mont. 2011) in support of their positions. Atlantic argues that *Gonzales* supports the conclusion that federal courts commonly consider insurance coverage issues in declaratory judgment actions, while Pitchfork distinguishes *Gonzalez* by noting that the Court specifically observed that there was no need for any additional factual development in the underlying case. Both are correct: federal courts are quite capable of determining insurance coverage issues, but are subject to the third *Brillhart* factor which requires analysis of whether the facts to be determined in the underlying case are intertwined with the legal determinations to be made in the declaratory judgment action. The Court finds that they are, and thus the third *Brillhart* factor weighs in favor of dismissal.

//

//

//

//

---

[1] The Court notes the Policy contains an endorsement that modifies the "expected or intended" exclusion (Doc. 1-2 at 33), but how or whether that modification affects the determination of coverage will turn, at least in part, on facts at issue in the Underlying Suit.

### III.   Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Pitchfork's Motion to Dismiss (Doc. 9) is

**GRANTED and this case is dismissed without prejudice.**

DATED this 7th day of December, 2021.

Kathleen L. DeSoto
United States Magistrate Judge